## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY C. HENDERSON, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 09-187J |
| v. | ) ) | Magistrate Judge Bissoon[1] |
| UPMC, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER

## I. MEMORANDUM

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 40) the Second

Amended Complaint will be granted, and Karen Camesi's Motions to Intervene (Doc. 42)

and to Dismiss (Doc. 45) will be denied as moot.

Plaintiff alleges that Defendants violated ERISA by failing to credit to her retirement

plan hours that she worked, but for which she was not paid. *See generally* 2d Am. Compl.

(Doc. 32). Specifically, Plaintiff claims that she was not properly compensated for meal breaks,

automatically deducted from her pay, during which she was required to perform job duties.

*See generally id.* at ¶¶ 22-44.[2] Plaintiff acknowledges that her case is related to the FLSA

collective action regarding meal breaks in Camesi v. University of Pittsburgh Medical Center,

Civil Action No. 09-85J (W.D. Pa.) (Bissoon, M.J., presiding). *See id.* at ¶ 39; *see also id.*

at ¶ 44 (Defendants' purported ERISA violations "flow out of violations of state and federal fair

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms
(Docs. 36 & 37).
[2] Plaintiff also alleges claims regarding "unpaid pre-shift patient status report reviews." *Id.* at ¶¶
45-59. The Court's analyses herein apply to those claims with equal force.

labor standards laws") (emphasis added).  Plaintiff alleges that Defendants violated ERISA by failing to maintain/furnish records regarding unpaid meal breaks, and that, relatedly, Defendants violated their fiduciary duties under the statute.  *See generally* 2d Am. Compl. at ¶¶ 79-84.

As reflected in the parties' briefing, there is conflicting jurisprudence regarding the extent to which an employer/plan administrator may be liable under ERISA for failing to credit hours allegedly compensable under the FLSA.  The Court sees little benefit in recounting each of the various legal decisions that have issued.  Rather, and in the absence of Third Circuit authority, the Court will rely on the well-reasoned decision in Mathews v. ALC Partner, Inc., 2009 WL 3837249 (E.D. Mich. Nov. 16, 2009).

In Mathews, the court stated:

> [The p]laintiffs . . . bring ERISA claims predicated on [the defendants'] failure to . . . credit . . . additional hours worked (but not compensated for) to their accounts in the ERISA benefit plans, with the result that the [p]laintiffs' retirement benefits . . . are or will be smaller than they should be according to plan documents.  [Generally, the court agrees with the defendants that their alleged] decision not to pay . . . employees for all hours worked, and therefore credit the retirement account for all hours worked, was a business decision, not an ERISA fiduciary decision, so the failure to credit the plan for all hours worked could not have breached any fiduciary duty. . . .
>
> But the [c]ourt also [concludes] that if the [defendants'] retirement plan determined an employee's ERISA benefits based on the number of hours worked or wages <u>earned</u>, and not merely on wages actually <u>paid</u>, then the decision whether to credit hours worked -- even unpaid hours -- would be a fiduciary decision under ERISA.

*Id.* at *1 (emphasis in original).  The issue before the Mathews Court, then, was "whether the [defendants'] plan documents tie[d] ERISA benefits to wages earned, or rather to wages actually paid."  *Id.* at *3.

Turning to the plan documents, the court in <u>Mathews</u> found that the plaintiffs' ERISA benefits were "defined in terms of 'Compensation,'" and that, in turn, "Compensation" was defined by what was reflected in the plaintiffs' W-2 forms.  *See id.* at \*4-5.  Because "[a] Form W-2 includes [w]ages, tips, and other compensation an employee <u>is actually paid</u>," and because "[w]ages are defined" under the Internal Revenue Code ("IRC") as "remuneration" (which means "to pay"), the court concluded that the defendants owed no fiduciary or recording obligations under ERISA for hours allegedly worked but not paid.  *See id.* at \*5-6 (citation to quoted sources omitted, some internal quotations omitted, emphasis added); *see also id.* at \*7 ("[b]ecause plan benefits [we]re pegged solely to wages actually paid, the [defendants'] plan fiduciary had no duty to maintain records of all hours actually worked, or [to] credit the employees' retirement accounts by all hours actually worked").

In reaching this conclusion, the <u>Mathews</u> Court rejected the plaintiffs' reliance on plan provisions regarding "Hours of Service."  *See id.* at \*6.  Although "Hour of Service" was defined as "each hour for which an employee [wa]s directly or indirectly compensated <u>or entitled to compensation</u>," the court found that this provision neither "preclude[d] [nor] contradict[ed the] conclusion that plan benefits [we]re tied to compensation, which [wa]s tied to wages actually paid."  *Id.* at \*7.  "The relevant inquiry [wa]s the meaning of the word 'Compensation,'" and "'Hours of Service,' whatever its meaning, [wa]s not relevant to the question of whether ERISA benefits [we]re tied to wages earned or wages paid."  *Id.*

The instant case is the same as <u>Mathews</u> in all material respects.  As Plaintiff's briefing confirms, all three of Defendants' relevant retirement plans ("the Plans") tie ERISA benefits to

the defined term, "Compensation."  *See* Pl.'s Opp'n Br. (Doc. 47) at 3 (citing record evidence).[3]

Each of the Plans defines "Compensation" as "compensation as reportable in Box 1 of [IRS]

Form W-2."  *See* Doc. 48-1 at pg. 9 of 40; Doc. 48-4 at pg. 10 of 40; Doc. 48-9 at pg. 14 of 28.

As in Mathews, "Compensation," as so defined, means sums paid to Plaintiff, not the hours she

allegedly worked.  *See* discussion *supra*.  Subsequent terms of the Plans' "Compensation"

definitions confirm this interpretation.  *See* Doc. 48-1 at pg. 9 of 40 ("Compensation" includes

"[f]inal compensation[,] including pay for unused vacation or paid time off . . .[,] paid after an

Employee's Separation of Service") (emphasis added); Doc. 48-4 at pg. 10 of 40 *and* Doc. 48-9

at pg. 14 of 28 (same).[4]

Plaintiff next relies on one Plan's definition of "Includible Compensation," which

addresses "the amount of compensation from an Employer that . . . [w]as earned by the

Participant during the most recent period" and "[i]s includible in the gross income of the

Participant."  *See* Pl.'s Opp'n Br. at 4, 15; *see also* Doc. 48-1 at pg. 16 of 40.  As referenced

above, however, the benefits provisions of the Plans identified by Plaintiff make no reference to

"Includible Compensation"; they refer exclusively to the defined term, "Compensation."

That term has been interpreted by the Court as meaning hours paid, and Plaintiff's reliance on

the "Includible Compensation" provision is unconvincing.[5]

---

[3]  Plaintiff herself has filed the master Plan documents, and they may be considered under
Federal Rule 12(b)(6).  *See* Mathews at *3 (holding same).
[4]  The Court rejects Plaintiff's attempt to distinguish Mathews and other decisions based on the
Plans' reference to compensation "reportable" on W-2 forms, as opposed to "reported."
*See* Pl.'s Opp'n Br. at 17.  Semantic niceties aside, the Plans plainly described "Compensation"
within the context of Plaintiff's W-2 forms, and those forms contemplate monies actually paid.
*See* discussion *supra* in text.
[5]  Nowhere in Plaintiff's pleadings does she claim to be a participant under the single Plan
referencing "Includible Compensation."  *See generally* 2d Am. Compl. at ¶ 6 (claiming that
"contributions [were] made on Plaintiff's behalf," but failing to identify under which Plan(s)).
The Plan discussing "Includible Compensation," moreover, does so within the context of

Finally, Plaintiff relies on the Plans' definition of "Hour[s] of Service."  *See* Pl.'s Opp'n Br. at 4.  As in <u>Mathews</u>, Plaintiff has failed to demonstrate any connection between the "Hour[s] of Service" provisions and the definition of "Compensation," upon which the accrual of ERISA benefits depends.  *See* <u>Mathews</u> at *7 ("[t]he relevant inquiry is the meaning of the word 'Compensation,'" and "'Hours of Service,' whatever its meaning, is not relevant to the question of whether ERISA benefits [we]re tied to wages earned or wages paid").

Plaintiff's allegations and arguments are materially indistinguishable from those asserted in <u>Mathews</u>, and the undersigned agrees with that court's conclusion that Plaintiff cannot state a claim upon which relief may be granted.  In reaching this conclusion, the Court has considered, and rejected, the contrary decisions cited by Plaintiff.  In <u>Gerlach v. Wells Fargo & Co.</u>, for example, the court opined:

> Under [d]efendant's interpretation of the [p]lan, a [p]lan participant could earn wages . . . [and] be deprived of the corresponding pension credits if [d]efendant illegally withheld those wages.  The central allegation of the complaint . . . is that [d]efendant violated the FLSA by not paying [p]laintiff overtime wages for overtime work. . . .  Defendant should not be permitted to create the illusion of establishing a pension benefit plan under ERISA, only to avoid thereafter the obligation to pay benefits by violating federal law.

*Id.*, 2005 U.S. Dist. LEXIS 46788, *7-8 (N.D. Cal. June 13, 2005).

This undersigned respectfully disagrees with the <u>Gerlach</u> Court's reasoning.  Plaintiff's pleadings neither allege, nor reasonably infer, that Defendants' meal break deduction policy was implemented to circumvent Defendants' obligations under ERISA.  Furthermore,

---

"gross income" and IRC Section 403.  *See* Doc. 48-1 at pg. 16 of 40.  The Plan's discussion of "gross income," within the context of the IRC, supports the conclusion that "Compensation" must be read consistently with IRS form W-2, and the definition of "wages" as understood therein.  *See* discussion *supra* ("[w]ages are defined" under IRC as "remuneration," which means "to pay").

the "slippery slope" argument in <u>Gerlach</u> runs equally, if not more persuasively, in the other direction.  Specifically, adopting the <u>Gerlach</u> Court's reasoning would permit any plaintiff who participates in an employer-administered plan to state ERISA claims based on allegations that she received less pay than she was entitled to under the law.[6]

In the end, the undersigned questions generally the wisdom of interpreting ERISA as a supplemental form of relief for alleged FLSA violations.  As Defense counsel aptly observes, "[o]ne can [only] imagine the turmoil, expense and uncertainty that would be created if pension plan administrators were charged by the courts with the additional duty of investigating the pay of all participants to ensure that they are being paid in compliance with all federal, state and local laws."  *See* Defs.' Br. (Doc. 41) at 9; *see also id.* at n.5 ("[i]t is unnecessary to try to shoe horn a remedy for violations of the FLSA into ERISA" because, "[i]f an employee were to establish that she . . . was owed back pay due to a violation of the [FLSA], the Equal Pay Act, the Wage Payment and Collection Law, or for any other reason," "[t]he employer would then have a duty to provide that corrected pay information to the plan administrator [for] use in [determining] benefits").

The Court need not reach such sweeping issues here, however, because Defendants' recording and fiduciary obligations under the Plans extended not to hours allegedly worked by Plaintiff, but to the wages she was paid.  *Compare* discussions *supra with* <u>Mathews</u>, 2009 WL

---

[6]  If, for example, a plaintiff alleged she was denied a pay increase in violation of the federal employment discrimination statutes, <u>Gerlach</u> presumably would permit that plaintiff to seek ERISA remedies based on the difference between what she was paid and what she should have been paid.  This scenario is no less plausible than the hypothetical situation posed in <u>Gerlach</u>, *i.e.*, that an employer would deny lawful payment to its employees in order to avoid making full ERISA contributions.

3837249 at *7 (dismissing with prejudice plaintiffs' claims for breach of fiduciary duty and

failure to maintain records under ERISA).[7]

       For all of the reasons stated above, the Court enters the following:

## II.  ORDER

       Defendants' Motion to Dismiss (**Doc. 40**) is **GRANTED**, Plaintiff's Second Amended

Complaint is **DISMISSED WITH PREJUDICE**, and Karen Camesi's Motions to Intervene

(**Doc. 42**) and to Dismiss (**Doc. 45**) are **DENIED AS MOOT**.

       IT IS SO ORDERED.


January 11, 2010                                  s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States Magistrate Judge


cc (via email):

All Counsel of Record

---

[7]  In addition to <u>Mathews</u>, the Court also relies on the decisions, cited by Defendants, in <u>Steavens v. Electronic Data Systems Corp.</u>, 2008 WL 3540070, *4 (E.D. Mich. Aug. 12, 2008) and <u>Maranda v. Group Health Plan, Inc.</u>, 2008 WL 2139584, *2 (D. Minn. May 20, 2008). *See* Defs.' Br. at 7 (citing relevant passages).